UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SCOTT E. STRUCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Cause No. 1:11-cv-1521-WTL-TAB |
| TOWN OF FISHERS, INDIANA, acting by ) | |
| and through its Police Department, ) | |
| OFFICER RYAN JONES, and ) | |
| OFFICER J. HAWKINS, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This cause is before the Court on the motion for partial summary judgment filed by the Defendants, Town of Fishers, acting by and through its Police Department, Officer Ryan Jones, and Officer J. Hawkins (dkt. no. 27). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion in its entirety for the reasons set forth below.

## I.     PRELIMINARY MATTERS

In response to the Defendants' motion for partial summary judgment, Plaintiff Scott E. Struck submitted what appears to be an incomplete, unsigned, and unsworn statement made by Christine Anderson regarding the incident which is the subject of this lawsuit. The Defendants move to strike Anderson's statement because it does not comply with Federal Rule of Civil Procedure 56.[1] Because the statement does not assist Stuck with establishing the elements necessary to defeat the Defendants' motion for partial summary judgment, the Court need not, and does not, resolve the Defendants' objections to it.

---

[1] The Court appreciates the Defendants' compliance with Local Rule 56-1(i).

## II.     STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the Court accepts as true all admissible evidence presented by the non-moving party and draws all reasonable inferences in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## III.    BACKGROUND

On the evening of January 23, 2011, several Fishers police officers responded to a call at the home of Pat Quigley. The parties, however, have very different views of what transpired after the police arrived. With that said, the relevant facts of record, viewed in the light most favorable to Struck, the non-moving party, are as follow.

During the early morning hours of January 23, 2011, Pat Quigley called 911 after he and his girlfriend, Suzanne Cunningham, began arguing at his home. Fishers Police Officer James Hawkins responded to the call and eventually escorted Cunningham from the property. Hours later, on the evening of January 23, Cunningham, Struck, and several other guests visited

Quigley's home to watch Sunday Night Football. After Cunningham failed to respond to a friend's text messages, Cunningham's father called the Fishers Police Department and asked that it send officers to perform a welfare check on Cunningham at Quigley's home. Officer Ryan Jones was the first to arrive on the scene; Officer Hawkins arrived shortly thereafter.

After the police officers arrived at Quigley's home, Cunningham spoke with the officers on the front porch. When the conversation ended, and as Cunningham was in the process of closing the front door, Quigley, who was sitting on the couch in the living room yelled, "What the fuck did they want?" Upon hearing Quigley's question, the police officers pushed the door open. As a result, Quigley jumped from the couch, advised the police that they did not have a warrant, and began yelling "Get the fuck off my property!" Struck attempted to calm Quigley and pulled him back from the officers.

At that point, with the officers still standing on the porch, Quigley shut and locked the front door. Officer Jones immediately broke through the locked door, and a piece of the door frame hit Struck's leg and became caught on his blue jeans. As Struck bent down to remove the door frame from his pants and toss the wood to the side, Officer Hawkins deployed his Taser.[2] The barbs hit Struck's center mass and he retreated backwards 10-12 feet into the living room of Quigley's home. As Struck stumbled backwards into a pillar,[3] he heard someone shouting "Get on the ground!" Struck did as he was told and he was taken into custody by Officer Hawkins. Accordingly to Struck, "[a]t no time prior to firing the Taser did any of the [officers] warn Struck that he might be Tasered." Struck's Brief at 4.

---

[2] According to Officer Hawkins, he shot Struck with his Taser because he believed Struck was going to use the broken door frame as a weapon.

[3] When Struck collided with the pillar, he suffered a serious rotator cuff injury that required surgery to repair.

3

In the meantime, Officer Jones attempted to apprehend Quigley; however, Quigley struggled with Officer Jones in the entryway and resisted the seizure. During the struggle, another officer arrived at the scene and assisted Officer Jones with handcuffing Quigley. When Officer Jones finally made his way into the living room, Struck was already in custody.

After the incident, Struck was charged with battery and resisting arrest. The charges were later dismissed after he entered into a diversion agreement.

As a result of the incident, Struck filed the present litigation against the Town of Fishers, Officer Hawkins, and Officer Jones alleging both federal and state-law claims. The Complaint alleged, in part, that:

> 29. The acts and omissions of Jones, Hawkins, and the other officers constitute false arrest, illegal search, and excessive force in violation of the Fourth Amendment.
>
> 30. The acts and omissions of the officers constitute battery, trespass, false arrest, malicious prosecution, intentional infliction of emotional distress, and negligence under Indiana law.
>
> 31. The Town of Fishers is vicariously liable under Indiana law for the acts and omissions of its officers.

Complaint at 4.

## IV.   DISCUSSION

The Defendants' motion for partial summary judgment addresses the following claims against the following parties:

- All Defendants move for summary judgment on Struck's state-law malicious prosecution, intentional infliction of emotional distress, trespass, and negligence claims.

- Officer Jones and Officer Hawkins move for summary judgment on Struck's state-law battery and false arrest claims.

- Officer Jones moves for summary judgment on Struck's federal false arrest and excessive force claims.

Each claim is addressed below.

### A. State-Law Malicious Prosecution and Trespass Claims against All Defendants

In response to the Defendants' motion for partial summary judgment, Struck concedes that his claim of malicious prosecution must be dismissed pursuant to Ind. Code 34-13-3-3(6). Struck further concedes that his "claim of trespass fails because Plaintiff did not possess the land upon which the officers entered." Struck's Brief at 6. Accordingly, the Defendants are entitled to summary judgment on Struck's malicious prosecution and trespass claims.

### B. State-Law Intentional Infliction of Emotional Distress and Negligence Claims Against All Defendants

The Defendants argue that they are immune from liability for the claims of intentional infliction of emotional distress and negligence pursuant to Ind. Code 34-13-3-3(8), which is commonly referred to as the "law enforcement immunity" statute. According to the statute:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

Indiana courts have defined the term "enforcement" under the statute as "those activities in which a government entity or its employees compel or attempt to compel the obedience of

another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof." *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002). Struck seems to argue that his claims for intentional infliction of emotional distress and negligence should survive because they stem from his false arrest, which the statute clearly exempts from immunity. *See* Struck's Brief at 6 ("Plaintiff's state-law claims . . . survive because he was falsely arrested."). The Court does not agree.

Struck's negligence and intentional infliction of emotional distress claims arise from the actions of the Fishers police officers in arresting him pursuant to their belief that he was going to use the piece of broken door frame as a weapon. Regardless of whether the police officers' belief was erroneous, the Defendants have immunity because they were engaged in law enforcement duties. *See Miller*, 777 N.E.2d at 1104. Further, "add on" claims such as negligence and intentional infliction of emotional distress do not survive simply because they are a product of improper conduct. *See id*. at 1104-5 (court analyzed claims of negligence and false arrest independently of one another); *City of Anderson v. Weatherford*, 714 N.E.2d 181, 185-186 (Ind. Ct. App. 1999) (finding police officers immune from intentional infliction of emotional distress claim despite misconduct in executing warrant). Because Officer Jones and Officer Hawkins were enforcing the laws when Struck was hit with the Taser and arrested, the Defendants are entitled to summary judgment on Struck's intentional infliction of emotional distress and negligence claims.

**C. State-Law Battery and False Arrest Claims against Officer Jones and Officer Hawkins**

Officer Jones and Officer Hawkins argue that they are immune from personal liability under Ind. Code 34-13-3-5(b) because they were acting within the scope of employment at the time of Struck's arrest. Defendants' Brief at 9. In response to this argument, Struck

acknowledges that "Ind. Code § 34-13-3-5(b) requires that the state-law claims be directed at the officers' employer . . . rather than the officers individually." Struck's Brief at 7. Thus, to the extent that Struck's Complaint alleges claims of battery and false arrest against Officer Jones and Officer Hawkins individually, the officers are entitled to summary judgment on those claims.

### D.  Federal False Arrest and Excessive Force Claims against Officer Jones

Officer Jones argues that he is entitled to summary judgment on Struck's federal false arrest and excessive force claims because "it was Officer Hawkins, and not Officer Jones, who exerted force to make the arrest of Struck" and who ultimately "seized" Struck. Defendants' Brief at 11.

#### *1.  False Arrest*

In order to establish a violation of the Fourth Amendment, a plaintiff must show that the defendant's conduct constituted a "seizure" and that the seizure was unreasonable. *Belcher v. Norton*, 497 F.3d 742, 747 (7th Cir. 2007). "[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *Bielanski v. County of Kane*, 550 F.3d 632, 642 (7th Cir. 2008) (quoting *United States v. Mendenhall*, 446 U.S. 544, 553 (1980)). Struck does not dispute that it was Officer Hawkins who used force to arrest him. Struck argues, however, that "[Officer] Jones 'seized' [him] when he burst through his[4] front door wearing a full police uniform and drew his Taser.[5] This is a show of authority that restrained Struck's movement." Struck's Brief at 8. The relevant case law regarding violations of Section 1983, however, is not as broad as Struck contends.

---

[4] Struck concedes, however, that "he did not possess the land upon which the officers entered." Struck's Brief at 6. Thus, it was not "his" front door.

[5] Both Officer Hawkins and Officer Jones drew their Tasers. Defendants' Brief at 4.

7

The Seventh Circuit recently stated in *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, (7th Cir. 2013), that:

> [a] person is "seized" when his or her freedom of movement is terminated or restrained by intentionally applied physical force or submission to an assertion of authority. . . . A seizure rises to the level of an arrest when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.

*Id.* at 719 (citations omitted). Further, "an officer's show of authority becomes a seizure only if the person at whom it is directed actually submits to that authority." *United States v. Griffin*, 652 F.3d 793, 798 (7th Cir. 2011) (citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)).

In *Abbott*, the plaintiff (Cindy) filed suit under 42 U.S.C. § 1983 alleging false arrest, false imprisonment, and excessive force after a police officer (Sweeney) shocked her with his Taser during an arrest. The district court granted the defendants' motion for summary judgment and the plaintiff appealed. On appeal, the Seventh Circuit examined at what point the plaintiff had been "seized." The court reasoned as follows:

> Whether she ran, walked, sauntered, or moseyed, it is undisputed that Cindy approached Sweeney's position. Sweeney claims that he ordered her to halt before shooting her with his taser, and this too is undisputed because Cindy does not remember one way or the other. This order, however, did not constitute an arrest as it was an assertion of authority to which Cindy did not submit. . . . Thus, Cindy was not under arrest before she was shot with the taser.
>
> Furthermore, Cindy's alleged defiance of Sweeney's order to halt did not constitute resistance of an attempted arrest. Suppose Cindy had obeyed Sweeney's order and had stopped in her tracks—she would not have been deemed arrested or even seized at that point for the reason that Sweeney's order sought to prevent her from coming rather than going, that is, she was free to go anywhere in the world except closer to the squad car.

*Abbott*, 705 F.3d at 720.

Applying the reasoning in *Abbott* to the facts alleged in this case, it is clear that Struck was not seized before he was hit with the Taser by Officer Hawkins. Prior to that, Struck did not

8

submit to the officers' authority. In fact, according to Struck, "[a]t no time prior to firing the Taser did any of the [officers] warn Struck that he might be Tasered." Struck's Brief at 4. Thus, Struck had no reason to submit to the authority of Officer Jones before he was hit with the Taser by Officer Hawkins. Accordingly, Struck was not seized by Officer Jones within the meaning of Section 1983, and Officer Jones is entitled to summary judgment on Struck's federal false arrest claim.

### 2. Excessive Force

Again, Struck concedes that Officer Jones "did not use force upon him." Struck's Brief at 7. Struck argues that Officer Jones should nonetheless be liable because he "assisted and supported" Officer Hawkins, such that the Court should reasonably infer that "[Officer] Hawkins would not have entered the house without [Officer] Jones present as backup." Struck's Brief at 8. Such speculation, however, is not supported by the evidence of record. Further, Officer Jones' mere presence on the scene as "backup" does not support an independent claim for excessive force against Officer Jones. *See Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions.").

Struck also suggests that Officer Jones is liable to him for failing to intervene to prevent Officer Hawkins from using his Taser on him. According to Seventh Circuit case law:

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer has reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

*Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)) (emphasis in original). "Whether an officer had sufficient time to

9

intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2nd Cir. 1994)).

Struck, of course, argues that Officer Hawkins used excessive force, thereby satisfying the first prong of the standard.[6] Struck also argues that the timing element is met because:

> A jury could reasonably conclude that the officers had already decided to use their Tasers before they broke down the door, probably because [Officer] Hawkins had warned them that Quigley had been drunk and belligerent the night before. Thus, [Officer] Hawkins' firing of the Taser was not a response to the rapidly-evolving events after they entered the house but something they deliberately decided to do before they entered.

Struck's Brief at 9. Again, such speculation is not supported by the evidence of record. Further, Struck's description of the events establish that this was not a prolonged event, such that the officers had time to confer before Struck was hit by the Taser. In this regard, Struck describes the incident as follows:

> Once the door was locked Struck turned to Quigley to ask him what had just happened. Before his mouth could form the question, the front door burst open. Debris from the door frame flew inwards, hitting Struck in the head. A piece of door frame struck the bottom of Struck's leg and caught on his blue jeans. Struck bent down to toss the piece of door frame to the side; his eyes are directed to the side, in the direction he intended the door frame to go. As he was letting go of the piece of wood, Struck was Tasered.

Struck's Brief at 3-4 (citations omitted). Thus, even under Struck's version of events, it is clear that Officer Hawkins deployed his Taser in response to Struck picking up the piece of broken door frame and that Officer Jones did not have time to stop Officer Hawkins. *Cf. Lanigan*, 110 F.3d at 478 (finding that officer was not forced to throw himself between another officer's finger

---

[6]The Defendants maintain that the actions of Officer Hawkins did not violate the Fourth Amendment.

and the plaintiff's body "to interrupt the imminent poke in order to avoid liability under § 1983"). Accordingly, Officer Jones is entitled to summary judgment on Struck's excessive force claim.[7]

## V. CONCLUSION

For the reasons set forth above, the Defendants' motion for partial summary judgment is **GRANTED** in its entirety. For purposes of clarity, the following is a list of Struck's remaining claims:

- Federal illegal search claim against all Defendants[8];

- Federal false arrest and excessive force claims against the Town of Fishers and Officer Hawkins;

- State-law battery and false arrest claims against the Town of Fishers.

SO ORDERED: 03/19/2013

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[7]Officer Jones alternatively argues that he is entitled to qualified immunity on Struck's federal claims. Because the Court is granting summary judgment in favor of Officer Jones on Struck's federal claims on other legal grounds, the Court need not and does not address Officer Jones' qualified immunity argument.

[8]The Defendants state that Struck has agreed to voluntarily dismiss his federal illegal search claim and that the parties are in the process of preparing a proper stipulation of dismissal. As of the date of this Entry, however, no such stipulation of dismissal has been filed.